Louis M. Greenblott, J.
The plaintiff seeks to recover from the defendant the sum of $3,260.94 for goods sold and delivered.
Trial was held before the court without a jury.
The plaintiff is engaged in selling industrial chemical products. Among them is a substance called Aqua Nuchar, which is activated carbon, used to remove tastes and odors from drinking water.
The plaintiff entered into sales of this product with the defendant on eight separate occasions from May 15,1962, to November 29, 1962. The first order covered the purchase of 3,500 pounds. The invoice mailed to the city by the plaintiff set forth the price of the product at $42.60 per ton, for a total bill of $74.55. On August 1, 1962, the city was billed for 8,050 pounds at $42.60 a ton for a.total amount of $171.47. On August 8, 1962, the city was billed for 1,330 pounds at $42.60 a ton for a total amount of $28.33. On August 13, 1962, the city was billed for 1,120 pounds at $42.60 a ton for a total amount of $23.86. On October 31,1962, the city was billed for 3,500 pounds at $42.60 for a total .sum of $74.55. On November 29, 1962, the city was billed for 10,500 pounds at $42.60 a ton, for a total sum of $223.65. The plaintiff contends that the reasonable value of the product was $212 a ton and not the sum of $42.60 as billed.
It is the further contention of the plaintiff that through inadvertence on the part of one of its clerical employees, each of the invoices rendered to the defendant was billed erroneously in the amount of $42.60 per ton.
The plaintiff seeks judgment in an amount which is the difference between the price billed and the price it contends was correct and the reasonable value of the product.
It is the contention of the defendant that if there was error, it was a unilateral mistake on the part of the plaintiff, and since the contracts were fully executed, recovery should not be permitted. The city further contends that section 103 of the General Municipal Law prevents the granting of judgment to the plaintiff.
*334 It is undisputed that the defendant paid the plaintiff in accordance with the invoices rendered by the plaintiff. The alleged errors were apparently not discovered by the plaintiff until March of 1963 which was several months after the defendant had paid all of the bills. Although the plaintiff denies that it seeks reformation of the contracts, we find that the plaintiff does seek reformation of eight contracts. We further find that the defendant in no way caused the alleged mistake. We must therefore conclude that the mistake was a unilateral mistake and was that of the plaintiff only.
The New York law is clear that where a mistake is made by one party to a contract only and where the contract is fully executed so that the status quo cannot be restored, the party making the mistake cannot recover. (Livingston v. New York Life Ins. Co., 13 N. Y. S. 105.)
In Clark on New York Law of Contracts (vol. 1, pp. 102-103, § 83) it is stated: “It is the general rule of law, where the mistake is that of one party only, that whatever his real intention may be, if he manifests an intention to another so as to induce that other to act on it in making the contract, he will be estopped from denying that the intention as manifested was his real intention. And ordinarily where the contract is an executed one, and the status quo cannot be restored, the mistake must be mutual to be made the basis of relief.” (Emphasis supplied.)
We find further that the plaintiff was negligent in its handling of the contracts. After rendering its first invoice on May 15, 1962, containing a price of $42.60 per ton, plaintiff proceeded to make the same charge on seven subsequent occasions between that date and November 29, 1962. In our view of the facts, the city was lulled by these invoices into believing that the price set forth in each of them was proper.
Although it is not necessary to discuss the last point raised by the city, it is true that section 103 of the General Municipal Law mandates that municipalities must advertise for bids for all purchase contracts involving an expenditure of more than $1,000, and the contract must be awarded to the lowest responsible bidder. The total bill to the city for the eight purchases was $820.06. Since the estimated cost for the year 1962 was less than $1,000, the city could legally purchase the item on the open market without bids. If the plaintiff’s cause of action is upheld, the total purchases for 1962 would then amount to $4,081. The city contends that this would constitute an illegal transaction and would open the door to fraud. After items have been delivered and paid for by a municipality, the supplier could then *335 insist that he had made an error and be paid at a higher figure. This would circumvent the intent of section 103 of the General Municipal Law because it would place the plaintiff in a position superior to other vendors who would lose their opportunity to submit bids. There is merit to this contention of the city.
For all the reasons outlined in this opinion, the motion of the defendant to dismiss the plaintiff’s complaint is hereby granted.